This is a petition for writ of certiorari seeking review of a decision by the Third District Court of Appeal, reported at 355 So.2d 825
(Fla. 3d DCA 1978), which conflicts with the decisions in State v. Riggins, 348 So.2d 1209 (Fla. 4th DCA 1977), andLytwyn v. State, 353 So.2d 222 (Fla. 1st DCA 1977). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. (1972). *Page 547 
Petitioner was charged with two counts of manslaughter by culpable negligence, section 782.07, Florida Statutes (1975), and two counts of manslaughter by operating a vehicle while intoxicated, section 860.01, Florida Statutes (1975), arising out of an accident in which his automobile collided with and killed two persons who were apparently attempting to repair a motorcycle on the shoulder of an entrance ramp to a state road. Immediately following the accident, petitioner was taken to the county jail for a breathalyzer test. He was allowed to call his attorney and based on advice of counsel refused to consent to the test. Subsequently, he was taken to a hospital where a blood test was administered despite his repeated refusal to consent. The test results yielded a reading of 0.14 percent alcohol, above the level at which one is presumptively under the influence of alcohol to the extent that normal faculties are impaired. § 322.262(2)(c), Fla. Stat. (1975).
Prior to trial, petitioner filed a motion to suppress the results of the blood test. The trial court denied the motion, and after a non-jury trial, found petitioner guilty of both counts of manslaughter by operating a vehicle while intoxicated. On appeal, the district court affirmed.
Petitioner raises four issues for the Court's consideration. He asserts that the trial court erred in allowing the blood sample to be used as evidence after he had refused to submit to a breathalyzer test, that the trial court erred in receiving the results of the alcoholic content of the blood test as prima facie evidence of intoxication, that the evidence was insufficient for conviction and that the charging statute, section 860.01, Florida Statutes (1975), was unconstitutional.
For reasons to be discussed we find it necessary to consider only the first of these contentions. It should, however, be noted that petitioner's contention that section 860.01, Florida Statutes (1975), is unconstitutional has been decided contrary to his position in the recent case Baker v. State, 377 So.2d 17
(Fla. 1979).
The issue before this Court is one that has been considered by three district courts of appeal, but which has never been squarely presented to this Court, that is, whether or not a chemical test for blood alcohol content is admissible evidence when a driver exercises the option given him by the Florida legislature in section 322.261(1)(a), Florida Statutes (1975), to refuse to consent to a chemical test of his breath. In State v.Riggins, 348 So.2d 1209 (Fla. 4th DCA 1977), Lytwyn v. State,353 So.2d 222, (Fla. 1st DCA 1977), and McDonald v. State, 364 So.2d 1241
(Fla. 2d DCA 1978), the courts held that section 322.261(1)(a), commonly referred to as the "implied consent law," allows an individual to refuse to take a chemical test to determine the alcohol content of his blood and makes any evidence derived from the administering of such test inadmissible in court. In Smith v. State, 378 So.2d 281 (Fla. 1979), this Court, citing Riggins with approval, stated that the state is prohibited from taking a blood sample from a person who expressly objects to a chemical test.
Section 322.261(1)(a) provides:
 Any person who shall accept the privilege extended by the laws of this state of operating a motor vehicle within this state shall by so operating such vehicle be deemed to have given his consent to submit to an approved chemical test of his breath for the purpose of determining the alcoholic content of his blood if he is lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of alcoholic beverages. The test shall be incidental to a lawful arrest and administered at the request of a peace officer having reasonable cause to believe such person was driving a motor vehicle within this state while under the influence of alcoholic beverages. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 3 months. *Page 548 
 Section 322.261(1)(c) provides:
 Any such person who is incapable of refusal by reason of unconsciousness or other mental or physical condition shall be deemed not to have withdrawn his consent to such test. Any such person whose consent is implied as hereinabove provided and who, during the period within which a test prescribed herein can be reasonably administered, or who, being admitted to a hospital as a result of his involvement as a driver in a motor vehicle accident, is so incapacitated as to render impractical or impossible the administration of the aforesaid test of his breath shall be deemed to have consented also to an approved blood test given as provided for herein and shall be deemed not to have withdrawn his consent therefor. Under the foregoing circumstances, a blood test may be administered whether or not such person is told that his failure to submit to such blood test will result in the suspension of his privilege to operate a motor vehicle upon the public highways of this state.
In addition, section 322.261(1)(d) provides in relevant part that:
 If any such person refuses the officer's request to submit to a chemical test herein provided, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle within this state while under the influence of alcoholic beverages and that the person had refused to submit to the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of 3 months. No suspension shall become effective until 10 days after the giving of written notice thereof, as provided for in paragraph (e).
In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that the taking of a blood sample without consent did not violate theFourth Amendment of the United States Constitution. This Court, in Filmon v. State, 336 So.2d 586 (Fla. 1976), upheld the constitutionality of section 322.261, Florida Statutes (1975), against challenges based on the Fourth Amendment as well as the equal protection clauses of the Florida and United States Constitutions. What is at issue here, however, is not the constitutionality of this provision but rather the right of the state of Florida to extend to its citizenry protections against unreasonable searches and seizures greater than those afforded by the federal constitution. This it has done through the enactment of section 322.261, Florida Statutes (1975). Under this provision, a conscious person is given the right to refuse to take a chemical test if he is willing to suffer a three-month suspension of his driving privilege. We recently held in Statev. Bender, 382 So.2d 697 (Fla. 1980), that there is a compelling state interest in highway safety that justifies the use of driver license suspension for failure to take a breathalyzer or blood alcohol test.
The state asserts that said consent is not material where the blood test is taken incidental to a lawful arrest and where there is probable cause to take a blood test coupled with exigent circumstances. It contends that section 322.261(1)(a) is inapplicable in the instant case and that the administration of the test should be judged on constitutional principles. The state ignores section 322.261(1)(c). This Court is not free to ignore plain statutory language and obvious legislative intent. Any careful reading of section 322.261 leads to the inescapable conclusion that a person is given the right to refuse testing. If this were not so, it is unclear why the legislature provided for a definite sanction and a detailed procedure for the enforcement of such sanction. Not once, but twice, the implied consent law provides for a three-month suspension in the case of refusal. Section 322.261(1)(c) specifically provides for the administration of a blood test to unconscious or incapacitated persons; there is, however, no mention of the administration of a blood test to conscious persons.
The state argues that the holding in Filmon should dictate a different conclusion. There are, however, significant factual differences between this case and Filmon. In *Page 549 Filmon, the defendant was conscious and failed to give consent. In this case, Mr. Sambrine not only failed to consent but affirmatively refused to take the breath test. This of crucial importance. Section 322.261 provides that the act of accepting the privilege to drive in this state carries with it consent to submit to an approved chemical test to determine blood content. Language to this effect is found in the signature block of the Florida driver license. In addition, there is no provision that a driver be informed of his right to refuse; he must merely be informed that his failure to submit to a chemical test will result in a three-month suspension. Revocation of this consent (with the appropriate sanctions) requires affirmative action on the part of the driver. Such action was present in this case, but not in Filmon.
The argument that this interpretation of the "implied consent law" would effectively do away with the concept of implied consent as constitutionally delineated by the Federal Constitution and Schmerber is a matter that is better addressed to the legislature than this Court. Apparently, the Florida legislature has decided that a sufficient penalty for revoking one's implied consent is three months' suspension of driving privilege. (It should be noted that this law when originally enacted as chapter 67-279, Laws of Florida, carried a six-month suspension.)
It is a matter peculiarly within the legislative sphere to establish penalty provisions for noncompliance with substantive law. The legislature may have concluded that it was preferable to enforce the implied consent law through this method than mandate that its law enforcement officials be required to physically restrain every individual who refused to submit to the test.
We hold that the motion to suppress should have been granted in the trial court and remand the case to the district court with directions to instruct the trial court to grant the defendant a new trial. This Court is not unmindful of a comment which was made by the trial judge to the effect that without the evidence of this chemical test a conviction would have been impossible. We do, however, consider this comment as an insufficient basis upon which to conclude that reversal be granted on grounds of insufficient evidence, thereby mandating a dismissal.
The decision of the district court of appeal is quashed and this case is remanded for further proceeding in accordance with the views expressed in this opinion.
SUNDBERG, C.J., and BOYD, OVERTON and ALDERMAN, JJ., concur.
ENGLAND, J., dissents.